# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | Case No. 12-00902-TLM |
| LAWRENCE DARWIN MCKAY, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION

### INTRODUCTION

In this chapter 7 case,[1] SFR Investments Pool 1, LLC ("SFR") filed a "Motion to Retroactively Annul the Automatic Stay" under § 362(d).[2]  *See* Doc. No. 191 (the "Annulment Motion").  The Annulment Motion is opposed by Wells Fargo Bank, N.A. ("Wells Fargo").

The Annulment Motion was heard on October 17, 2018, and taken under advisement following evidence and oral argument.[3]  This Decision resolves the

---

[1]  Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532.  Rule references are to the Federal Rules of Bankruptcy Procedure.

[2]  "Annulment" under § 362(d) is a means of providing retroactive relief.  *See Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir.1995).  Therefore, the term "retroactively annul," though used in many cases, is redundant.

[3]  All exhibits that were marked prior to hearing were admitted by stipulation of the parties.  There are several duplicates in SFR's Exs. 100–118 and Wells Fargo's Exs. 200–218.

(continued...)

MEMORANDUM OF DECISION - 1

Motion, and constitutes the Court's findings and conclusions on the contested matter under Rules 7052 and 9014.

## BACKGROUND AND FACTS

### A.    The proceedings in Debtor's case

Lawrence McKay ("Debtor") filed a voluntary chapter 11 petition for relief on April 19, 2012. Doc. No. 1. On May 3, 2012, Debtor filed his schedules and statement of financial affairs ("SOFA"). Doc. No. 22. He listed among his 20 largest unsecured creditors "Wells Fargo Hm [Home] Mortgag[e]" (hereafter "WFHM") as holding an unliquidated and disputed unsecured claim of $354,946. Debtor described that claim as: "FHA Real Estate Mortgage on property in Sparks, NV. Co-signer on son's home. Debtor has no interest." *Id.* at 3. Debtor's assertion that he had no interest in the Nevada real property was echoed by his schedule A, which disclosed "none." *Id.* at 6. His schedule F disclosed WFHM as an unliquidated and disputed unsecured creditor in a fashion similar to his statement of 20 largest creditors. *Id.* at 25. Debtor's schedule H indicated his co-debtor on the WFHM obligation was his son, Brian McKay, who Debtor described as being the "Principal obligor and deeded owner of property." *Id.* at 27. And, in

---

[3](...continued)
Since many exhibits in both sets are copies of filings made in this bankruptcy, Case No. 12-00902-TLM, the Court will take judicial notice of its own files and records, *see* Fed. R. Evid. 201(b)(2), (c)(1), and for convenience and clarity, refer to the docket number ("Doc. No.") of such filings rather than exhibit numbers.

MEMORANDUM OF DECISION - 2

his SOFA, Debtor asserted that a WFHM foreclosure occurred in April 2012 on the Sparks, Nevada property. *Id.* at 36.[4] Debtor's co-obligor interest was described in the SOFA in the same terms as in the schedules. *Id.*

The real property at issue in all these disclosures is 4329 Clearwood Drive, Sparks, Nevada, 89436 (the "Property"). That was made clear in Debtor's chapter 11 disclosure statement filed on December 12, 2012. *See* Doc. No. 75 at 4, 7.[5] Debtor also referred to and attached copies of certain "corrected" schedules in the disclosure statement . *Id.* at 16, 24.[6] Debtor's proposed chapter 11 plan, Doc. No. 76, indicated Debtor "shall surrender any right, title or interest in [the Property] to [Wells Fargo Bank]." Doc. No. 76 at 2, 3.

The disclosure statement's "corrected schedules" also listed Foothills at Wingfield HOA (the "HOA") as an unsecured nonpriority creditor, for "HOA

---

[4] The evidence regarding the Property is discussed *infra*. It generally appears that, despite Debtor's references to WFHM, Wells Fargo Bank held the interest in the Property.

[5] Debtor here referred to "Wells Fargo Bank" rather than WFHM as the creditor with an interest in the Property. *Id.*

[6] Debtor's disclosure statement explained: "[O]ne of the unsecured claims, Wells Fargo Bank, has filed a fully secured claim on the property owned by Brian McKay, Debtor's son. Debtor *may have an interest* in that house but it is worth less than the Wells Fargo mortgage, which is $445,300 according to Wells Fargo's claim # 16. Debtor intends to surrender that house in the Plan." *Id.* at 4 (emphasis added). While he suggested "Debtor *may* have an interest," he indicated in his liquidation analysis that the Property *was* "owned by son and Debtor as joint tenants." *Id.* at 7. The proposed "corrected" schedules A and D also indicated the Property was "owned by son and Debtor as joint tenants." *Id.* at 16, 24. The putative amended schedule D, *see id.* at 24, again referred to WFHM rather than Wells Fargo Bank.

MEMORANDUM OF DECISION - 3

Dues re Sparks, NV" in an unknown amount.  Doc. No. 75 at 29.[7]  These

documents, at best, only *suggested* that corrected schedules would be filed.

Nothing in the record shows any attempt by Debtor at this time to effect an

amendment of the schedules and statements.

On January 4, 2013, three weeks after the disclosure statement and plan

Notwithstanding the references Debtor made to these other previously

undisclosed creditors on the proposed "corrected" schedules, the disclosure

statement and plan were not served on parties other than those receiving electronic

service.  *See* Doc. Nos. 75, 76 at Notice of Electronic Filing (NEF) (showing that

Wells Fargo Bank was served via its counsel, and that there was no service on

WFHM, the HOA, or Fuller Jenkins).[8]

On January 4, 2013, three weeks after the disclosure statement and plan

were filed, the case was converted to a chapter 7 liquidation.  *See* Doc. Nos. 79

(decision), 80 (order).[9]

On February 6, 2013, a month after conversion to chapter 7, Debtor

amended schedules A, D, and F, and filed the requisite statement of intention.

---

[7]  The address shown for the HOA was "c/o Assoc Management Inc, 5955 Tyrone Rd, Ste 1, Reno, NV 89502," and indicated a "notice only" address for the HOA was Fuller Jenkins, c/o Jen Floyd, 9190 Double Diamond Parkway, Reno, NV 89521, as "representing" the HOA.  *Id.* at 29–30 (hereafter "Fuller Jenkins").

[8]  Wells Fargo Bank's attorney filed a request for notice on June 1, 2012.  Doc. No. 34.

[9]  Debtor had previously agreed with the U.S. Trustee that a plan and disclosure statement would be filed by a date certain deadline.  Debtor breached that agreement, establishing cause for conversion under § 1112(b)(4)(J).  *Id.*

MEMORANDUM OF DECISION - 4

Doc. No. 99.  He indicated in his amended schedule A that the Property was "owned by son and Debtor as joint tenants" but also inconsistently characterized the "Nature of Debtor's Interest in Property" as "Unknown."  *Id.* at 4.  Amended schedule D showed WFHM as the creditor secured by the Property.  *Id.* at 12.  The statement of intention proposed surrender of the Property to this creditor.  *Id.* at 24.  The same filing added the HOA to schedule F, and Fuller Jenkins was listed there as representing the HOA.  *Id.* at 17–18.

There is no certificate of service or other proof of service of these amended schedules.  Additionally, the docket entry for the amendments that was prepared by Debtor's counsel affirmatively indicates that "Creditors are not being added to the mailing matrix."  However, at the hearing on the Annulment Motion, Debtor's attorney, D. Blair Clark, testified that it was the practice of his office to send copies of amended schedules to any party identified therein which had not previously received notice.  But he conceded under examination that the documents of record contained no detail—such as certificates of service—that would establish any such notification actually occurred.  And while the February 6, 2013 amendment to the schedules, as executed by Clark and filed with the Court, states: "Pursuant to Federal Rule of Bankruptcy Procedure 1009(a), I certify that notice of the filing of the amendment(s) listed above has been given this day to any and all entities affected by the amendment *as follows*," the space

MEMORANDUM OF DECISION - 5

after this statement is left blank, with no identification of any such entities.  Ex.

208 at 1 (emphasis added).

The following day, February 7, 2013, Debtor's counsel filed an application

for compensation.  Doc. No. 102.  The notice of that application, Doc. No. 103,

contained a certificate of service with a copy of the master mailing list ("MML")

dated as of February 7.  This MML does not include either the HOA or Fuller

Jenkins.  Doc. No. 103 at 4–6.  The chapter 7 trustee later, on March 28, 2013,

filed a motion seeking a sale order (regarding different property of the estate) and

a notice of hearing on such motion.  Doc. Nos. 118, 119.  The MML used by

Trustee dated March 28, 2013, shows WFHM, but does not show either the HOA

or Fuller Jenkins.  Doc. No. 118-1.  Thus, while Debtor added the HOA and Fuller

Jenkins in his amended schedules, the record does not establish that Debtor served

them or added their addresses to the MML.

On June 18, 2013, Wells Fargo Bank filed a motion for relief from the

§ 362(a) stay in order to foreclose its interest in the Property.  Doc. Nos. 132,

134.[10]  That motion was unopposed and granted on July 11, 2013.  Doc. No. 142.

Debtor's discharge was entered on February 25, 2014.  Ex. 210 (Doc. No.

154).  The certificate of service regarding that discharge also does not indicate that

---

[10]  The motion contains a copy of the underlying note, which is executed by both Brian
McKay and Debtor as borrowers, and a deed of trust executed by both as "joint tenants."

MEMORANDUM OF DECISION - 6

either the HOA or Fuller Jenkins was listed or served.  Doc. No. 155 at 3–5.

Trustee's notice of final report was thereafter issued on May 20, 2015.  It

was not served on the HOA or Fuller Jenkins.  Doc. Nos. 180, 181.  The case was

closed on July 28, 2015.  Doc. No. 185.

On June 12, 2018, SFR sought to reopen the case.  Doc. No. 187.  That

motion was granted and the case was reopened on June 14, 2018.  Doc. No. 189.

The Annulment Motion followed.

**B.    The evidence regarding the Property**

In addition to the facts established by the Court's record as noted above, the

evidence at hearing on October 17, 2018, establishes the following.

1.    On November 16, 2011, the HOA through its agent and

attorney, the firm of Fuller Jenkins Clarkson,[11] recorded a notice of delinquent

assessment lien against the Property.  On December 29, 2011, more than 30 days

after the recording of this notice, the HOA, through Fuller Jenkins, recorded a

"notice of default and election to sell under notice of delinquent assessment"

against the Property.  Both these dates preceded the filing of Debtor's chapter 11

petition on April 19, 2012.

2.    On October 12, 2012, the HOA through Fuller Jenkins

---

[11]  It appears that Fuller Jenkins, the party Debtor identified in amended schedules as the
entity entitled to receive notice for the HOA, is the same firm as Fuller Jenkins Clarkson.  The
Court will continue to refer to Fuller Jenkins in this Decision.

MEMORANDUM OF DECISION - 7

recorded a Notice of Trustee/Foreclosure Sale.  Pursuant thereto, a sale of the

Property occurred on November 13, 2012, and the Property "reverted" to the

HOA.[12]

      3.    Fuller Jenkins, on behalf of the HOA, received a trustee's sale

guaranty ("TSG") from a title company dated December 29, 2011.  Ex. 213

(referencing Order No. 6221213).  Since the TSG predates Debtor's bankruptcy

filing, it showed no exceptions or other notifications related to Debtor's

bankruptcy.  *Id.*[13]

      4.    A "publication endorsement" to the TSG was later issued by

the title company under Order No. 6221213 on October 5, 2012.  *See* Ex. 214

("TSG Endorsement").  The TSG Endorsement stated that, subsequent to the

December 29, 2011 date of the TSG, additional matters shown by the public

record which would affect the assurances in that guarantee included, *inter alia*, the

following:

> [NOTE] 3[:] PROCEEDINGS PENDING IN THE BANKRUPTCY COURT OF
> THE U.S. DISTRICT COURT, IDAHO, ENTITLED IN RE LAWRENCE D.
> MCKAY, DEBTOR, CASE NO. 112-BK-00902, WHEREIN A PETITION FOR
> RELIEF WAS FILED UNDER CHAPTER 11 ON 4/19/2012.
>
> NOTE: WE ARE UNABLE TO DETERMINE IF THE ABOVE-MENTIONED

---

[12]  It was only after this date that Debtor filed the chapter 11 disclosure statement and plan in December 2012 indicating an intention to surrender whatever interest he held in the Property.

[13]  It did show, however, that title at the time of the TSG was vested in Brian McKay and Lawrence D. McKay as joint tenants.  *Id* at 2.

MEMORANDUM OF DECISION - 8

DEBTOR IS THE SAME PERSON AS LAWRENCE D. MCKAY.

*Id.*[14]

5.      The HOA completed the Nevada foreclosure process and acquired the Property on January 8, 2013, by way of a Trustee's Deed Upon Sale. Ex. 215.

6.      Over five months later, on or about April 22, 2013, SFR purchased the Property from the HOA.

7.      The HOA then transferred the Property to SFR on May 9, 2013, by a quitclaim deed.  Ex. 207.

8.      Though Wells Fargo Bank had received a July 11, 2013, order terminating the stay in order to foreclose its deed of trust, it did not pursue such foreclosure.

9.      After SFR's purchase of the Property in May 2013, and after its post-purchase investments in the Property, Wells Fargo on May 26, 2017, commenced an action to quiet title to the Property and for declaratory relief in the U.S. District Court for the District of Nevada, Case No. 3:17-cv-00332-LRH-

---

[14]  The TSG Endorsement, Ex. 214, refers to "Order No. 6221213."  The trustee's deed under which Fuller Jenkins processed the HOA foreclosure bears the same number.  *See* Ex. 215 (recorded as Instr. No. 4192629).  And the quitclaim deed by which Fuller Jenkins transferred the Property to SFR, Ex. 207, references Instr. No. 4192629 as the deed under which Fuller Jenkins obtained the Property.  SFR's principal, Christopher Hardin, testified that he "probably" reviewed the trustee's deed, Ex. 215, prior to purchasing the Property from Fuller Jenkins, and "may have" reviewed the quitclaim deed, Ex. 207, before its recording.  He stated that he had not seen the TSG until the hearing.

MEMORANDUM OF DECISION - 9

WGC (the "Nevada Action").

### C.   The chronology, restated

Thus, as outlined above from the hearing evidence and the Court's own

docket and record:

| | |
|---|---|
| Nov. 16, 2011 | HOA[15] files notice of delinquent assessment |
| Dec. 29, 2011 | HOA files notice of default and election to sell the Property |
| Dec. 29, 2011 | TSG is issued to HOA |
| Apr. 19, 2012 | Debtor files chapter 11 bankruptcy |
| Oct. 5, 2012 | TSG Endorsement is issued noting possible bankruptcy by co-owner |
| Oct. 12, 2012 | HOA records notice of Trustee/Foreclosure Sale |
| Nov. 13, 2012 | Sale occurs and Property transferred to HOA via Trustee's Deed |
| Dec. 12, 2012 | Debtor's disclosure statement is filed with "corrected" schedules disclosing HOA and Fuller Jenkins |
| Jan. 4, 2013 | Debtor's bankruptcy is converted to chapter 7 |
| Feb. 6, 2013 | Debtor amends schedules to list HOA and Fuller Jenkins, but with no proof of service |
| Feb. 7, 2013 | Debtor's counsel applies for compensation; MML does not show HOA or Fuller Jenkins |
| Mar. 28, 2013 | Trustee files notice of sale of other property; MML does not show HOA or Fuller Jenkins. |
| Apr. 22, 2013 | SFR purchases Property from HOA |
| May 9, 2013 | Quitclaim Deed recorded transferring Property to SFR |
| June 18, 2013 | Wells Fargo Bank seeks stay relief on Property |
| July 11, 2013 | Wells Fargo Bank receives stay relief |
| Feb. 11, 2014 | Debtor's discharge entered; MML does not show HOA or Fuller Jenkins |
| May 26, 2017 | Wells Fargo Bank commences Nevada Action |
| Jun. 14, 2018 | Debtor's bankruptcy reopened on motion of SFR |
| Jun. 14, 2018 | SFR files Annulment Motion |

---

[15]   As noted earlier, in each instance the acts of the HOA were through Fuller Jenkins.

MEMORANDUM OF DECISION - 10

### D.    Testimony of Christopher Hardin

There were two witnesses at hearing, Debtor's counsel, Clark, and SFR's principle, Hardin.  Hardin explained that SFR paid about $5,000 for the Property.[16] Hardin stated that he was not aware of the McKay bankruptcy at the time of the purchase, and that neither the HOA nor Fuller Jenkins called any bankruptcy or stay issue to his attention prior to the sale.

According to Hardin, SFR owns approximately 610 properties.  He could not identify, even in approximate terms, how many of those properties were acquired through purchases from HOAs, though he did admit that the Property at issue was not the first.  Of the properties SFR acquired, he said a "small percentage" of them "had bankruptcy issues."

Hardin testified that SFR relied on HOAs and their foreclosure trustees to address all issues related to the foreclosure and sale of the properties.  He said he does not get or review any title reports, and in this situation did not recall ever seeing the TSG until the hearing.  He stated that he had no knowledge of the "Order no. 6221213" that was referred to in the Trustee's deed by which SFR acquired ownership of the Property.[17]

---

[16]  The actual amount was $4,960.95.  *See* Ex. 218 (at declaration, p. 3).

[17]  The Court observes that Hardin's testimony was preternaturally vague in certain regards given the business of SFR which includes such HOA purchases (including "some" with bankruptcy issues) and the underlying litigation in Nevada.  As with all witnesses, the Court both
(continued...)

MEMORANDUM OF DECISION - 11

**DISCUSSION AND DISPOSITION**

The Nevada Action, and other submissions of the parties, reflect a highly

contentious situation existing in Nevada between the holders of deed of trust or

mortgage interests in residential real property, and the powers of an HOA to make

assessments against such property and to foreclose the property to satisfy such

assessments.  As summarized by the Nevada Bankruptcy Court in one decision:

> Under Nevada law, certain portions of HOA assessment liens have
> priority over residential mortgages.  See NRS 116.3116(2)(b).  When
> the homeowner does not satisfy the priority lien, the HOA can
> foreclose on the residence.  The Nevada Supreme Court has concluded
> that a valid HOA foreclosure sale of residential real property
> extinguishes the lower priority mortgage held by the residential lender.
> See SFR Inv. Pool 1, LLC v. U.S. Bank, 334 P.3d 408, 419 (Nev.
> 2014).  Even though Leeds had scheduled the value of her residence at
> $307,554 in her Schedule "A," SFR purchased the real property at the
> HOA foreclosure sale for $42,000.
>
> In a bankruptcy context, the consequences to the residential
> lender is extreme: the individual debtor's personal liability for the loan
> is discharged by the bankruptcy, see 11 U.S.C. § 727(b), and the
> lender's security interest against the residence is extinguished by the
> foreclosure.  See also Saticoy Bay LLC Series 350 Durango 104 v.
> Wells Fargo Home Mort., 388 P.3d 970, 973 (Nev. 2017).  The
> residential lender ends up with no enforceable obligation against the
> borrower because of the discharge injunction, see 11 U.S.C. § 524(a)(1
> and 2), and the purchaser at the HOA foreclosure sale ends up with title
> to the residence unencumbered by the prior mortgage.

See Doc. No. 217-1 (In re Leeds, 589 B.R. 186, 194 (Bankr. D. Nev. 2018)) at

---

[17] (...continued)
evaluates credibility and determines the weight to be given testimony, even when such issues are
not specifically addressed in its findings and conclusions.

MEMORANDUM OF DECISION - 12

internal p. 9.[18]

Despite the undercurrents impacting the parties' positions and arguments, the Annulment Motion here is straightforward.  SFR claims a lack of knowledge about Debtor's bankruptcy and the impact of that bankruptcy on the conveyance of the Property to it by the Quitclaim Deed on May 9, 2013.  It therefore asks the Court to annul the stay under § 362(d).  Wells Fargo opposes the Annulment Motion.

### A.    Standing

#### 1.    SFR's standing

The Bankruptcy Appellate Panel of the Ninth Circuit has held:

> Under § 362(d), a 'party in interest' may request relief from the stay.  A 'party in interest' can include any party that has a pecuniary interest in the matter, that has a practical stake in the resolution of the matter or that is impacted by the automatic stay. *Brown v. Sobczak (In re Sobczak)*, 369 B.R. 512, 517–18 (9th Cir. BAP 2007).  Proceedings to decide motions for relief from the automatic stay are very limited.  '[A] party seeking relief from stay need only establish that it has a colorable claim to enforce a right against property of the estate.' *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 914–15 (9th Cir. BAP 2011).  A party has a 'colorable claim' sufficient to establish standing to prosecute the motion if it has an ownership interest in the subject property.  *Id.* at 913; *Edwards v. Wells Fargo*

---

[18]  This document was an attached to a Wells Fargo Bank brief.  The *Leeds* case concerned SFR's purchase of property from an HOA (there, Butler Estate HOA) after the HOA had foreclosed its lien.  The matter before the Nevada Bankruptcy Court in *Leeds* was SFR's motion for annulment of the automatic stay.  The *Leeds* decision also refers to a prior reported case, *SFR Inv. Pool 1, LLC v. U.S. Bank*, 334 P.3d 408 (Nev. 2014).  SFR's involvement in such litigation has been considered by the Court in evaluating Hardin's testimony and the balance of the record.

MEMORANDUM OF DECISION - 13

*Bank, N.A. (In re Edwards)*, 454 B.R. 100, 105 (9th Cir. BAP 2011).

*Cruz v. Stein Strauss Trust #1361, PDQ Inv.s, LLC (In re Cruz)*, 516 B.R. 594,

602 (9th Cir. BAP 2014).   The BAP there found that the movant (a purchaser at a

foreclosure sale who had yet to record a trustee's deed on sale) had, as a party in

interest, a "colorable claim" and, thus, standing to seek stay relief.

SFR, under the facts of this case, has a colorable claim and, as a party in

interest, standing to prosecute the Annulment Motion.

### 2.    Wells Fargo's standing to oppose annulment

SFR argues that Wells Fargo lacks standing to oppose the Annulment

Motion.  SFR cites to a number of cases that hold a creditor does not have

standing to challenge a violation of the automatic stay.  Those cases are neither

relevant nor persuasive in the context of this case.  As the *Leeds* court explained:

> None of the cases denying standing to a creditor to challenge a
> violation of the automatic stay involve creditors whose consensual liens
> are permitted to be wiped out through a foreclosure sale by another
> creditor given statutory priority under state law.  In such circumstances,
> a foreclosure by a reckless HOA has no natural enemies other than the
> wiped out lien creditor: the individual debtor who lacks the ability to
> pay the HOA assessments nor the mortgage has no incentive to oppose
> retroactive relief from stay, and the assigned bankruptcy trustee who
> has no interest in an over-encumbered asset also has no incentive to
> oppose retroactive relief.

*Leeds*, 589 B.R. at 203 n.28.

The Court has not located, and the parties have not cited, any authority

MEMORANDUM OF DECISION - 14

regarding whether a secured creditor with a putatively avoided or foreclosed

consensual lien has standing to challenge an annulment motion.  However, this

Court has previously addressed standing requirements generally:

> There are two components to the doctrine of standing in federal litigation.  *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).  First, a party must meet the constitutional standing requirements of Article III.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  Second, a party must satisfy prudential standing limitations. *Valley Forge Christian College v. Americans United for Separation*, 454 U.S. 464, 471 (1982).
> . . .
>
> A party satisfies the constitutional standing threshold if he has suffered an injury, caused by the opposing party, which will likely be redressed by the relief sought from the court.  *See Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130.
> . . .
>
> In addition to the Article III constitutional standing requirements, the federal judiciary has developed a set of self-imposed limits on the exercise of jurisdiction. *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).  One of those judicially developed limitations is that a complaining party must assert their own legal rights and interests.  *Warth*, 422 U.S. at 499–500, 95 S.Ct. 2197.

*Beach v. Bank of America (In re Beach)*, 447 B.R. 313, 322–23 (Bankr. D. Idaho

2011).

Wells Fargo's mortgage interest in the Property was either actually or

arguably extinguished under Nevada law by the HOA's sale which—as the Court

discusses below—was conducted in violation of § 362.  The Property was then

MEMORANDUM OF DECISION - 15

sold to SFR.  Now, SFR necessarily asks this Court to validate the HOA

foreclosure, a precursor to the effectiveness of the sale, by annulling the stay.

Should the Court grant SFR's Annulment Motion, the effect would be to

permanently divest Wells Fargo of its interest in the Property.  Wells Fargo has

alleged harm suffered due to the conduct of the HOA and SFR, and it attempts to

prevent perpetuation of that harm by opposing SFR's annulment request.  As

explained by the *Leeds* court, SFR has "no natural enemies other than the wiped

out lien creditor."  Based upon the facts of this case, the Court concludes Wells

Fargo has both constitutional and prudential standing to oppose the Annulment

Motion.

### B.    Stay violations

The automatic stay arises immediately on the filing of a bankruptcy

petition.  *See* § 362(a).  It is "applicable to all entities" whether or not they are

creditors of the debtor.  *Id.*  It stays, *inter alia*, "any act to obtain possession of

property of the estate or of property from the estate or to exercise control over

property of the estate[.]"  § 362(a)(3).  Property of the estate includes "all legal or

equitable interests of the debtor in property as of the commencement of the case."

§ 541(a)(1).

An act taken in violation of the automatic stay is void *ab initio*.  *See*

*Schwartz v. U.S. (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992).  Thus, the

purchase of property of a bankruptcy estate in violation of the automatic stay is

MEMORANDUM OF DECISION - 16

void and the purchaser does not obtain valid legal title. *40235 Washington St. Corp. v. Lusardi (In re 40235 Washington St. Corp.)*, 329 F.3d 1076, 1080 (9th Cir. 2003) (purchase of bankruptcy estate property at county tax sale conducted in violation of automatic stay was without effect).

The HOA filed its Notice of Default and Election to Sell in December 2011, which was prior to Debtor's chapter 11 filing on April 19, 2012. However, subsequent to the bankruptcy filing, the HOA recorded the Notice of Trustee/Foreclosure Sale (Oct. 11, 2012), conducted such sale, purchased the Property in which Debtor had an interest, and recorded the Trustee's Deed (Nov. 12, 2012). Notice of the bankruptcy case, or other knowledge of the existence of it, certainly has consequences. *See* § 362(k); *see also Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003). However, even acts taken without knowledge of the bankruptcy violate the stay. *See In re Andrus*, 2004 WL 2216493, *10 (Bankr. D. Idaho Sept. 23, 2004).[19]

The HOA's postpetition acts of foreclosing, acquiring, and selling the Property are void *ab initio*. *Schwartz*, 954 F.2d at 572–73. Thus, the HOA did not obtain valid, legal title to the Property through its foreclosure sale. Consequently, SFR did not obtain valid, legal title when it purchased the Property from the HOA.

---

[19]  The issue of whether the HOA or its agent Fuller Jenkins had notice of the bankruptcy is addressed further *infra*.

MEMORANDUM OF DECISION - 17

### C.    Annulment of the stay

The question is whether SFR has met its burden of persuading the Court

that the stay should be annulled in order to rejuvenate the HOA's foreclosure and

acquisition of the Property.

The party who violated the stay may seek an order from the bankruptcy

court to annul the automatic stay for cause under § 362(d)(1).  *In re Leeds*, 589

B.R. 186 at 192–93 (citing *Schwartz*, 954 F.2d at 572–73).  Annulment "has the

effect of retroactively validating acts that otherwise violate the stay."  *Lonestar*

*Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 172 (9th Cir. BAP

2005); *see, e.g., Ceralde v. The Bank of N.Y. Mellon (In re Ceralde)*, 2013 WL

4007861 (9th Cir. BAP Aug. 6, 2013).

Whether "cause" exists under Section 362(d)(1) to annul the stay is

determined under a "balancing of the equities" test.  *See In re Fjeldsted*, 293 B.R.

12, 24 (9th Cir. BAP 2003). The following factors may be considered:

1.    Number of filings;
2.    Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3.    A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4.    The Debtor's overall good faith (totality of circumstances test);
5.    Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
6.    Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7.    The relative ease of restoring parties to the status quo ante;

MEMORANDUM OF DECISION - 18

8.    The costs of annulment to debtors and creditors;

9.    How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10.    Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11.    Whether annulment of the stay will cause irreparable injury to the debtor;

12.    Whether stay relief will promote judicial economy or other efficiencies.

*Leeds*, 589 B.R. at 193 (citing *Fjeldsted*, 293 B.R. at 25). The twelve *Fjeldsted* factors simply provide an analytical framework and any one factor may be dispositive in comparison to the others. *Id*. Thus, determining whether annulment is proper is made on a case by case basis.[20] *Id.* (citing *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir. 1997)).

As noted by the Ninth Circuit Court of Appeals, "[m]any courts have focused on two factors in determining whether cause exists to grant [retroactive] relief from the stay: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct " *Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055. A leading bankruptcy treatise explains annulment "validate[s] action taken by a party at a time when the party was unaware of the stay." 3 Collier on Bankruptcy ¶ 362.07[1] (Richard Levin & Henry J. Sommer Eds., 16th ed.).

---

[20]    Although not all *Fjeldsted* factors are addressed in this Decision, the Court has considered all factors and has afforded each the weight to which it is entitled.

MEMORANDUM OF DECISION - 19

Whether the HOA or SFR had notice of the bankruptcy and, therefore, the stay, is of paramount importance to the determination of whether to grant the Annulment Motion.  In filing and advocating the Annulment Motion, SFR relies in large part on its own professed lack of notice or knowledge of Debtor's bankruptcy at the time it purchased the Property from the HOA.  And nothing in the evidence clearly establishes that SFR was aware of the issues related to Debtor's bankruptcy at the time of that purchase.  However, SFR cannot use its professed ignorance to divorce itself from the problems of its predecessor in interest.  Because the HOA's acquisition of the property is a condition precedent to SFR's interest, and because stay violations are void *ab initio*, the material question is whether the HOA's violations of § 362(a) can be annulled.  Since the HOA is not before the Court, the burden is on SFR as movant to establish annulment of the HOA's stay violations is warranted.

The question for the Court, therefore, is whether the HOA was aware of or put on notice of Debtor's ownership interest in the Property and Debtor's bankruptcy case when it foreclosed and purchased the Property on November 13, 2012.  The record is rife with evidence that the HOA knew Debtor was one of two owners of the Property as far back as February 2008.  The declaration of the HOA's president explains that "Brian McKay and Lawrence D. McKay" obtained title to the Property on or around February 6, 2008.  Doc. No. 220-1 at 1.  Similarly, the HOA's accounting system lists "Brian & Lawrence D McKay" as

MEMORANDUM OF DECISION - 20

owners of the Property, showing a "settled" date of February 6, 2008.  Doc. No.

220-4 at 28.  Further, each of the notices regarding the delinquencies in paying

HOA fees and subsequent notices of intent to sell the Property listed "Brian

McKay" and "Lawrence D. McKay" as owners.  *See, e.g.,* Doc. No. 220-4 at 22,

24.  Most importantly, prior to its foreclosure and purchase the HOA obtained the

TSG, which provided that title to the Property was "vested in" Brian McKay and

Lawrence D. McKay as joint tenants.  Ex. 213 at 3.  It is absolutely clear from the

record that the HOA knew Debtor had an interest in the Property prior to its

November 2012 foreclosure and purchase of the Property.

There is also evidence in the record that the HOA had notice of Debtor's

bankruptcy at the time it foreclosed and purchased the Property.[21]  On October 5,

2012, more than a month prior to the HOA's foreclosure and purchase of the

Property, the HOA was alerted by the TSG Endorsement of the presence of a

bankruptcy case in Idaho filed by "Lawrence D. McKay."  Ex. 214.  A party

placed on notice of a possible bankruptcy must investigate and ensure itself that

the stay is not applicable.  A person is put on "inquiry notice" when it knew facts

that "would lead an ordinarily prudent person to investigate further."  *Winn v.*

*Sunrise Hosp. & Medical Center*, 277 P.3d 458, 462 (Nev. 2012) (quoting Black's

---

[21]  While it is true the MML was not shown to have been amended by Debtor or his
counsel, this would only indicate that the HOA and Fuller Jenkins were not provided notice by
mail of the amendments on February 6, 2013, when they were made on this Court's docket.  The
lack of directly mailed notice is problematic.  However, it is incidental to the issue of the HOA's
knowledge in November 2012.

MEMORANDUM OF DECISION - 21

Law Dictionary 1165 (9th ed. 2009)).

Here, the October 5, 2012 TSG Endorsement provided notice of an Idaho bankruptcy case involving an individual named "Lawrence D. McKay," although the title company did not verify that the Lawrence D. McKay in bankruptcy was the same Lawrence D. McKay with an interest in the Property. Had the HOA investigated the Idaho bankruptcy case, it would have discovered the debtor listed a $354,946.00 debt associated with real property in Sparks, Nevada, and that Brian McKay was listed as the "principle obligor" of that debt. Doc. No. 22 at 3, 25, 27. Inquiry would have also revealed that the address of the Property—4329 Clearwood Drive, Sparks, NV 89436—was listed seven times in Debtor's schedules, as the address for codebtor "Nevada Granite Industries." Doc. No. 22 at 27, 40. This information, along with its knowledge that Lawrence D. McKay had an ownership interest in the Property, was sufficient to alert the HOA to the fact that further acts regarding the Property, including its foreclosure and purchase, may violate the stay.

The HOA chose to ignore the warning provided by the TSG Endorsement and proceeded with its foreclosure sale without further inquiry. The Court cannot from this record find that the HOA would be entitled to annulment. Accordingly, SFR has not met its burden of proving there is cause to annul the stay. The Annulment Motion will be denied.

MEMORANDUM OF DECISION - 22

**CONCLUSION**

SFR has standing to bring the current Annulment Motion and Wells Fargo

has standing to oppose that relief.  The record establishes that the HOA and SFR

violated the automatic stay in foreclosing and purchasing the Property.  SFR has

not proven that annulment under § 362(d) is warranted, and the Annulment

Motion will be denied.  The Court will enter an order accordingly.

DATED:  February 14, 2019

TERRY L. MYERS
U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 23